1

2

3 **UNITED STATES DISTRICT COURT**

4 **NORTHERN DISTRICT OF CALIFORNIA**

5 **SAN JOSE DIVISION**

6

7 SHASHA SAGE,

Case No.  22-cv-07083-BLF

8 Plaintiff,

9 v.

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

10 COUNTY OF MONTEREY, et al.,

[Re:  ECF No. 32]

11 Defendants.

12

13    Defendants County of Monterey, Matthew Mendoza, Scott Davis, Angel Estrada, and

14 Miguel Perez-Laguna (collectively "County Defendants") move the Court for an order granting

15 summary judgment on all claims alleged against them.  ECF No. 32 ("Mot.").  Plaintiff Shasha

16 Sage, represented by counsel, filed an opposition to the motion.  ECF No. 53 ("Opp.").  The

17 County Defendants filed a reply.  ECF No. 57 ("Reply").  The Court found took the motion under

18 submission without oral argument.  *See* ECF No. 64; Civ. L.R. 7-1(b).

19    For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART the

20 motion.

21 **I.    BACKGROUND**

22    **A.    The Safe Parking Program**

23    In December 2017, the Monterey County Board of Supervisors approved a Safe Parking

24 Program, which allowed unsheltered individuals to park in a County-owned parking lot adjacent to

25 the Monterey County Board of Supervisors, District 4 offices in Marina, California ("the Lot")

26 between the hours of 7:00 p.m. and 7:00 a.m.  ECF No. 32-6 ("Suwansupa Decl.") ¶ 3.  To

27 participate in the program, individuals had to meet certain eligibility criteria, submit an

28 application, sign a waiver, and abide by a code of conduct.  *See id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

In early 2019, Plaintiff began parking her recreational vehicle ("RV") and trailer in the Lot continuously.  ECF No. 53-1 ("Sage Decl.") ¶ 2; Suwansupa Decl. ¶ 4.  The parties dispute whether Plaintiff was eligible for or registered in the Safe Parking Program.  *Compare* Suwansupa Decl. ¶ 4 ("Sage continuously parked her motorhome and trailer on the premises despite lacking eligibility for the program."); *id.* ¶ 6 ("Plaintiff was not a registered participant of the Safe Parking program."), *with* Sage Decl. ¶ 2 ("I was informed and led to believe that I was a registered member of the One Starfish Safe Parking Program."); *id.* ¶ 3 (noting that Plaintiff was treated as part of the program, featured on the brochure for the program, and provided community notices).  Plaintiff states that she was given permission to park her RV in the Lot continuously by program operator Dorian Manuel.  Sage Decl. ¶ 2.  In 2019 and 2020, program staff gave Plaintiff multiple warnings to leave, and the Monterey County Sheriff's Office repeatedly noticed Plaintiff's vehicle to relocate.  *See* Suwansupa Decl. ¶¶ 4, 6; ECF No. 32-1 at 826 ("Def. Ex. J") (a copy of the notice placed on Plaintiff's motorhome); *see also* Sage Decl. ¶ 2 (acknowledging that "[a]t some point, a sticker was put on my RV that I had 72 hours to move, but no action was taken").  Plaintiff did not relocate.  Suwasupa Decl. ¶¶ 4, 6; Sage Decl. ¶ 2.

In mid-2021, the Monterey County Department of Social Services ("DSS") received a variety of complaints about the health and safety of persons and conditions in the Lot, including reports of criminal activity and that the premises accumulated trash, waste, and debris that rendered the premises "unsuitable for the program's continuance."  Suwansupa Decl. ¶ 5.  In the fall of 2021, the Safe Parking Program was paused due to overcrowding and dangerous conditions.  *Id.*

On November 8, 2021, the Monterey County Sheriff's Office posted notices on all vehicles parked in the Lot, including Plaintiff's RV.  ECF No. 32-4 ("Perez-Laguna Decl.") ¶¶ 3, 4; ECF No. 32-1 at 772–80 ("Def. Ex. D") (Officer Perez-Laguna's report from November 8, 2021 describing vehicle abatement efforts in the Lot).  The notices stated that the vehicles needed to relocate no later than November 12, 2021.  *See* Perez-Laguna Decl. ¶ 4; Def. Ex. D.  From November 8 to November 12, the Monterey County Sheriff's Office, DSS, and outreach groups continued to visit the lot and reminded individuals that tow trucks would remove all vehicles on

November 12, 2021 at 7:00 a.m.  Perez-Laguna Decl. ¶ 5; ECF No. 32-3 ("Mendoza Decl.") ¶ 4

(Sergeant Mendoza stating that he visited the property every day from November 8 to 12 to advise

occupants to leave by November 12).  During this time, DSS provided individuals remaining in

the lot assistance with repairing their vehicles, draining septic tanks, updating registration tags and

driver's licenses, and accessing safety net social services.  *See* Suwansupa Decl. ¶ 9; *see also*

Perez-Laguna Decl. ¶ 5 ("I witnessed multiple individuals accept help from a mobile mechanic

contracted by Monterey County to help fix nonoperational vehicles so that they could be moved

out of the parking lot."); Mendoza Decl. ¶ 5 (describing outreach efforts, including the mobile

mechanic, mobile septic truck, and assistance with driver's licenses and registrations).

**B.    The Events of November 12, 2021**

On November 12, 2021, Sergeant Davis, Sergeant Mendoza, Deputy Estrada, and Officer

Perez-Laguna were on duty and assigned to assist with the removal of vehicles that remained in

the Lot.  ECF No. 32-2 ("Estrada Decl.") ¶ 2; Mendoza Decl. ¶ 3; ECF No. 32-5 ("Davis Decl.")

¶ 4; Perez-Laguna Decl. ¶ 6.  Around 8:20 a.m., Sergeant Davis and Deputy Estrada began driving

around the Lot repeatedly announcing that "this is the Monterey County Sheriff's Office, you are

to vacate the premises immediately or your vehicles will be subject to tow."  Davis Decl. ¶ 5;

Estrada Decl. ¶ 3.

At 9:30 a.m., a septic truck attempted to service Plaintiff's RV.  Estrada Decl. ¶ 4.  Deputy

Estrada observed Plaintiff blocking the path of the septic drain valve and yelling.  Estrada Decl.

¶ 4.  Sergeant Davis and Deputy Estrada stood between Plaintiff and the service person.  Estrada

Decl. ¶ 4; Davis Decl. ¶ 7.  Plaintiff continued to yell and attempted to go around Sergeant Davis

multiple times, and in doing so ran over and hit Sergeant Davis's shins and boots with the wheels

of her walker.  Estrada Decl. ¶¶ 4–5; Davis Decl. ¶ 8.  Davis instructed Plaintiff not to run over his

feet.  Davis Decl. ¶ 8.  Plaintiff contests this characterization of the events and states that she was

trying to get away from Sergeant Davis and that he initiated contact by attempting to step in front

of Plaintiff.  Sage Decl. ¶ 7.  Sergeant Mendoza also observed Plaintiff yelling and using a

bullhorn to shout at law enforcement from a close distance.  Mendoza Decl. ¶ 7.  On several

occasions, Plaintiff bumped her walker into Sergeant Mendoza's legs and ran over his boots.

1    Mendoza Decl. ¶ 7.  Sergeant Mendoza advised Plaintiff to stop and back away.  *Id.*

2            Around 10:20 p.m., a tow truck arrived to tow Plaintiff's RV and trailer.  Mendoza Decl.

3    ¶¶ 7–8.  As the tow truck arrived, Plaintiff walked toward the entry door of the RV.  Mendoza

4    Decl. ¶ 8.  She said, "I'm not going to let them tow my RV away.  I'm going inside my home."

5    Davis Decl. ¶ 9.  Sergeant Mendoza and Officer Perez-Laguna believed Plaintiff was going to

6    barricade herself inside and prevent the towing of the vehicle and instructed Plaintiff not to re-

7    enter the RV.  Mendoza Decl. ¶ 8; Perez-Laguna Decl. ¶ 9.  Plaintiff states that this belief is

8    incorrect, and that she was merely attempting to gather her personal belongings.  Sage Decl. ¶ 8.

9    Plaintiff notes that the RV was "not hooked up to any tow truck at the time—and in fact, the RV

10   was blocked in by another car at that time."  *Id.*

11          Plaintiff grabbed the door handle of the entry door and pulled it open as Sergeant Mendoza

12   extended his hand to keep the door closed.  Mendoza Decl. ¶ 9.  This action caused the door to

13   strike Sergeant Mendoza's hand.  Mendoza Decl. ¶ 9; Perez-Laguna Decl. ¶ 10.  Plaintiff then

14   repeated the action, resulting in the door striking Sergeant Mendoza's forearm.  Mendoza Decl.

15   ¶ 9.  Plaintiff then attempted to enter the RV.  Mendoza Decl. ¶ 9.  Sergeant Mendoza became

16   concerned that Plaintiff was entering the vehicle to grab a weapon, so he grabbed her right wrist.

17   Mendoza Decl. ¶ 9.  Plaintiff does not own any weapons and maintains that she posed no threat to

18   the officers because she is a disabled woman that uses a walker.  Sage Decl. ¶ 9.  Next, Officer

19   Perez-Laguna arrived and assisted by trying to control Plaintiff's left wrist and asking Plaintiff to

20   step down.  Mendoza Decl. ¶ 10; Perez-Laguna Decl. ¶ 11.  Sergeant Davis also arrived to assist.

21   Davis Decl. ¶ 11.  Plaintiff grabbed the door handle of the motorhome, and Sergeant Davis

22   instructed her to let go and place her hands behind her back.  Davis Decl. ¶ 11.  Plaintiff refused to

23   comply, so Sergeant Davis gained control of her right wrist and handcuffed it.  Davis Decl. ¶¶ 11–

24   12.  Finally, Deputy Estrada arrived to assist Sergeant Davis in removing Plaintiff's hands from

25   the RV doorframe and handcuffing Plaintiff.  Estrada Decl. ¶ 7.  At one point while the officers

26   attempted to handcuff Plaintiff, Plaintiff made her body stiff, dropped to the ground, and refused

27   to comply with officer commands.  Estrada Decl. ¶¶ 7–8; Davis Decl. ¶ 13.  Sergeant Davis then

28   radioed for an ambulance.  Davis Decl. ¶ 13.  Plaintiff was arrested for unlawfully resisting arrest

United States District Court
Northern District of California

and battery upon a peace officer pursuant to Penal Code Sections 148(a)(1) and Section 243(b). Estrada Decl. ¶ 9; Davis Decl. ¶ 14; ECF No. 32-1 at 8 ("Def. Ex. B") (police report).  Plaintiff states that during the arrest, the officers "roughly grabb[ed] me from behind, jerk[ed] me around, put me in a pseudo-chokehold[,] and swung my body around."  Sage Decl. ¶ 5.  She continues that "[a]t one point, the officers pushed me down, causing my head to bounce off the bottom stair of the RV."  *Id.*

While on the ground and handcuffed, Plaintiff stiffened her body and began yelling that she could not breath.  Estrada Decl. ¶ 9; Mendoza Decl. ¶ 11.  Sergeant Davis attempted to sit Plaintiff up, but she stated that this was hurting her back.  Davis Decl. ¶ 15.  Eventually, Plaintiff requested to lie on her stomach.  Estrada Decl. ¶ 10; Davis Decl. ¶ 15.  Deputy Estrada and Sergeant Davis assisted Plaintiff in rolling on her stomach and monitored her breathing until fire and ambulance arrived.  Estrada Decl. ¶ 10; Davis Decl. ¶ 15.  Fire and an ambulance arrived and transported Plaintiff to the hospital at the officers' request.  Estrada Decl. ¶ 11.  Plaintiff states that she suffered "head trauma, head laceration, lack of memory, disorientation, confusion, headaches and neck aches, exacerbation of pre-existing physical injuries, as well as injuries to my wrist and arms . . . [in addition to] physical and emotional pain and suffering."  Sage Decl. ¶ 6.  Deputy Estrada rode with Plaintiff to the hospital, and after she was discharged, Deputy Estrada transported her to the Monterey County Jail for booking.  Estrada Decl. ¶ 12.

Plaintiff's medical records from her emergency room visit state the following:

> 1312: The patient refused acetaminophen "that shit doesn't work".  X-rays of her left shoulder, chest, pelvis are read by the radiologist as no acute disease.  She is ambulatory.  Vital signs are stable.  She states her whole body hurts since her incident where she was hit by a car 2 years ago.  She states this is her vagina pain and this is nothing new.  At this point she appears to be medically stable for admittance into jail.
> 1319: When the patient was informed that she was going to be discharged she stated: [redacted]
> 1349: The patient has been evaluated by [redacted] and felt to be safe for admittance into jail at this time.

ECF No. 32-1 at 788 ("Def. Ex. F").

### C.    Property Damage and Loss

Plaintiff states that she lost property after her November 12, 2021 arrest.  Plaintiff recovered her RV, but was required to pay $500 to retrieve it.  *See* Sage Decl. ¶ 10; ECF No. 32-7 ("Romero Decl.") ¶ 5 (noting that Plaintiff's counsel recovered Plaintiff's RV on December 7, 2021); ECF No. 32-1 at 840 ("Def. Ex. O") (a pickup receipt reflecting that Plaintiff's former counsel picked up the RV and paid $515).  Plaintiff states that she had in excess of $20,000 cash in the RV, which was not recovered when she recovered the RV.  Sage Decl. ¶ 11.

Plaintiff also states that she never recovered her trailer.  Sage Decl. ¶ 10.  On November 12, 2021, individuals whose vehicles, RVs, or trailers were towed were given information on how to retrieve them from Laurel Yard in Salinas, California.  Suwansupa Decl. ¶ 12.  As of May 11, 2022, Plaintiff's trailer continued to be stored at Laurel Yard and Plaintiff had not yet retrieved the trailer.  Romero Decl. ¶ 4.  Plaintiff did not receive a notice on how to retrieve her vehicle and trailer.  Sage Decl. ¶ 13.  However, Plaintiff states that she contacted the County about the trailer, but the towing and storage fees were too high for her to retrieve it.  *Id.* ¶ 12.

Plaintiff also states that she did not recover her personal property, including bicycles, pots, pans, jewelry, a tow bar, a generator, and eighteen 55-gallon drums, each of which contained approximately $3,000 of clothing and living articles.  Sage Decl. ¶ 10.  On November 13, 2021, DSS cleared and stored any belongings, including Plaintiff's, that were left in the Lot.  *See* Suwansupa Decl. ¶ 11.  DSS posted notices in the lot with instructions on how to retrieve the items.  *Id.*; ECF No. 31-1 at 832 ("Def. Ex. M") (a copy of the notice posted at the Lot).  The notice stated that "[i]tems left as of 11/12/2021 will only be stored for 30 days."  Def. Ex. M. Consistent with this notice, DSS stored personal property for 30 days.  *See* Romero Decl. ¶ 6.  After 30 days, the property was deemed abandoned and disposed of.  *Id.*  Although DSS issued notices to individuals on how to retrieve their property, no one contacted DSS to claim personal belongings.  *Id.*  Plaintiff states that, in the 24-hour period between her arrest and DSS's retrieval of personal belongings, another unsheltered individual could have "picked over" her personal items and "the items stored by the County did not include all of my personal belongings."  Sage Decl. ¶ 13.

### D.    Procedural History

On November 10, 2022, Plaintiff filed the complaint in this action.  ECF No. 1 ("Compl."). Plaintiff brings the following claims against the County Defendants and One Starfish, Inc.: (1) a claim of unreasonable seizure in violation of the Fourth Amendment and Article I, § 13 of the California Constitution against the County Defendants, Compl. ¶¶ 23–27; (2) a claim of excessive force in violation of the Fourth Amendment and Article I, § 13 of the California Constitution against the County Defendants, Compl. ¶¶ 28–38; (3) a claim of violation of her due process rights under the Fourteenth Amendment and Article I, § 7 of the California Constitution against the County Defendants, Compl. ¶¶ 39–45; (4) a claim of state-created danger in violation of the Fourteenth Amendment against the County Defendants, Compl. ¶¶ 46–47; (5) a claim under California Civil Code § 52.1, Compl. ¶¶ 48–50; (6) a *Monell* claim against the County, Compl. ¶¶ 51–56; (7) a claim under California Civil Code § 2080 against the County Defendants, Compl. ¶¶ 57–58; (8) a claim for conversion against the County Defendants, Compl. ¶¶ 59–64; (9) a claim for false arrest against the County Defendants, Compl. ¶¶ 65–68; (10) a claim for battery against the County Defendants, Compl. ¶¶ 69–72; and (11) a claim of wrongful eviction against the County and One Starfish, Compl. ¶¶ 73–78.[1]

On October 23, 2023, the County Defendants moved for summary judgment.  Mot.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to the nonmoving party "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue

---

[1] Plaintiff also brings a claim for injunctive relief, but a request for injunctive relief is a remedy, not a stand-alone claim.  *Brown v. Transworld Sys., Inc.*, 73 F.4th 1030, 1038 (9th Cir. 2023).

of material fact." *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the moving party does not have the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted). If the nonmoving party's "evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). Mere conclusory, speculative testimony in affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]." *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

## III.    DISCUSSION

### A.    False Arrest (Claims 1 and 9)

The County Defendants argue that they should be granted summary judgment on Defendant's false arrest claims[2] because the officers had probable cause to arrest Plaintiff because

---

[2] The County Defendants are not precise about the false arrest claims to which they refer. Plaintiff brings a false arrest claim under § 1983, the California Constitution, and California common law. *See* Compl ¶ 24 (Claim 1, alleging that "Defendants violated Plaintiffs [sic] right to be free from false arrest [under the Fourth Amendment and the California Constitution]."); Compl. ¶¶ 65–68

United States District Court
Northern District of California

1    she assaulted Sergeant Mendoza with her motorhome door, she refused to follow law enforcement

2    orders in removing her trailer from the Lot, and she resisted arrest.  Mot. at 8–9.  The County

3    Defendants also argue that the officers are entitled to immunity under California Penal Code

4    § 847(b)(1).  *Id.* at 9.  Plaintiff did not respond to any of these arguments in her opposition, and

5    instead summarily states without legal argument or evidence that her arrest was unlawful.  Opp. at

6    10; *see also* Opp. at 1–2 (identifying the "main contentions in this lawsuit" as "excessive force,"

7    "property damage," and "tenancy" without mention of false arrest or probable cause).  The County

8    Defendants argue that her failure to address Claim 9 constitutes waiver or abandonment.  Reply at

9    6.

10            The Court agrees that Plaintiff's failure to address false arrest or probable cause constitutes

11   forfeiture of her false arrest claims.[3]  It is well-established that "a plaintiff has 'abandoned . . .

12   claims by not raising them in opposition to [the defendant's] motion for summary judgment.'"

13   *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (quoting *Jenkins v. Cty. of Riverside*, 398

14   F.3d 1093, 1095 n.4 (9th Cir. 2005)); *see also Bernstein v. Virgin Am., Inc.*, 365 F.Supp.3d 980,

15   985 (N.D. Cal. 2019), *amended in part*, No. 15-CV-02277-JST, 2022 WL 17994018 (N.D. Cal.

16   Dec. 29, 2022) ("Where a party 'has a full and fair opportunity to ventilate its views with respect

17   to an issue' at summary judgment, yet does not raise it, the Ninth Circuit deems the argument

18   abandoned on appeal." (quoting *BankAmerica Pension Plan v. McMath*, 206 F.3d 821, 826 (9th

19   Cir. 2000))).  "Nonetheless, the application of this waiver or forfeiture doctrine is discretionary,

20   both on appeal and with the district court."  *Bernstein*, 365 F.Supp.3d at 985.  Although the Court

21   agrees that Plaintiff has forfeited this issue, the Court will exercise its discretion to address the

22   merits.

23            Before proceeding to the merits, the Court finds that the County Defendants have failed to

24

25   _____

     (Claim 9, alleging a false arrest tort claim).

26   [3] Plaintiff's failure to address arguments in this case constitutes forfeiture, not waiver.  "The terms
     waiver and forfeiture—though often used interchangeably by jurists and litigants—are not

27   synonymous.  Forfeiture is the failure to make the timely assertion of a right; waiver is the
     intentional relinquishment or abandonment of a known right."  *Hamer v. Neighborhood Housing*

28   *Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017) (cleaned up) (quoting *United States v. Olano*, 507
     U.S. 725, 733 (1993)).

United States District Court
Northern District of California

1   meet their initial burden on summary judgment with respect to Plaintiff's claim of false arrest

2   under the California Constitution.  The County Defendants have not identified the elements of a

3   claim of false arrest under the California Constitution, nor have they raised any argument why

4   they are entitled to summary judgment on this claim.  Accordingly, the Court DENIES the County

5   Defendants' motion to the extent they request summary judgment on the false arrest claim under

6   the California Constitution.

7         The outcome of Plaintiff's false arrest theories under the Fourth Amendment and

8   California tort law turns on whether the officers had probable cause to arrest Plaintiff.  "A

9   warrantless arrest of an individual in a public place for a crime committed in an officer's presence

10  violates the Fourth Amendment if the arrest is not supported by probable cause." *Blankenhorn v.*

11  *City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007).  California Penal Code § 847 states that

12  "[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any

13  peace officer or federal criminal investigator or law enforcement officer . . . acting within the

14  scope of his or her authority, for false arrest" if the arrest is lawful or if the officer has reasonable

15  cause to believe it was lawful.  Cal. Pen. Code. § 847(b)(1).  In California, a peace officer is

16  authorized by statute to arrest a person without a warrant if the officer has probable cause to

17  believe that the person arrested has committed a "public offense" in the officer's presence.  Cal.

18  Penal Code § 836(a)(1).  Resisting arrest and battery on a police officer, for which Plaintiff was

19  arrested, are both public offenses.  *See* Cal. Penal Code § 15 (defining a "public offense" as an act

20  punishable by imprisonment or fine); *see also* Cal. Penal Code § 148(a)(1) (resisting arrest is

21  punishable by imprisonment and/or fine); Cal. Penal Code § 243 (battery on a police officer is

22  punishable by imprisonment and/or fine).

23        The Court will focus on battery of a police officer.  Although Plaintiff was also arrested for

24  resisting arrest under Cal. Penal Code § 148(a)(1), any such resistance arose out of the initial

25  arrest.  If the officers did not have probable cause to arrest Plaintiff initially, then they could not

26  lawfully arrest Plaintiff for resisting arrest.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261

27  F.3d 912, 920 (9th Cir. 2001) ("If the officers could not lawfully arrest [the plaintiff] for battery,

28  the officers could also not lawfully arrest [the plaintiff] for resisting arrest."); *see also*

United States District Court
Northern District of California

*Blankenhorn*, 485 F.3d at 472 (collecting cases coming to a similar conclusion).

The undisputed evidence shows the arresting officers in this case had probable cause to believe that Plaintiff had battered Sergeant Mendoza. "Probable cause exists where the 'available facts suggest a fair probability that the suspect has committed a crime.' When assessing probable cause, courts must consider the totality of the circumstances known to the officers at the time." *Hill v. City of Fountain Valley*, 70 F.4th 507, 515 (9th Cir. 2023) (internal citation omitted) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006)). The County Defendants have presented facts showing that Plaintiff battered Sergeant Davis and Sergeant Mendoza—for example, Plaintiff ran over and hit Sergeant Davis's shins and boots with the wheels of her walker, Estrada Decl. ¶¶ 4–5; Davis Decl. ¶ 8; did the same to Sergeant Mendoza, Mendoza Decl. ¶ 7; and hit Sergeant Mendoza's forearm with the door of her RV at least twice, Mendoza Decl. ¶ 9; Perez-Laguna Decl. ¶ 10. To the extent that Plaintiff contests these facts, she relies solely on her declaration which states that Plaintiff did not bump into Sergeant Davis with her walker and that he initiated contact. Sage Decl. ¶ 7. Although the Court draws all reasonable inferences in Plaintiff's favor, Plaintiff's declaration contests only one of the facts supporting battery. This is not sufficient to create a genuine dispute for trial because Plaintiff does not dispute that she hit Sergeant Mendoza with her walker and the door of her RV. Plaintiff's failure to present any facts that might negate probable cause is fatal to her false arrest claims. Because the undisputed facts show that the officers had probable cause to believe that Plaintiff committed battery on a peace officer, Plaintiff has failed to point to sufficient evidence to create a dispute of material fact on her claims of false arrest under the Fourth Amendment.

Because the officers had probable cause to believe that Plaintiff battered police officers, the arrest was lawful, and the officers are entitled to immunity from Plaintiff's state law false arrest claim. *See Blankenhorn*, 485 F.3d at 487 (holding that officers were entitled to immunity from a false imprisonment claim where they had probable cause to believe the plaintiff was trespassing, and that his arrest for trespassing was lawful); *see also Henry v. Bank of Am. Corp.*, 522 F. App'x 406, 408 (9th Cir. 2013) (finding immunity under Cal. Penal Code § 847 where officers had probable cause to effectuate an arrest). Because the officers are not subject to civil

liability for false arrest, it follows that the County is not liable.  *See Hass v. Sacramento Cnty. Sheriff's Dep't*, No. 2:13-CV-01746 JAM, 2014 WL 1616440, at *2 (E.D. Cal. Apr. 18, 2014) (noting that the Defendant County "is generally liable for the actions of its employees under the theory of respondeat superior" and "to state a cause of action against Defendant, Plaintiff must plead facts that, if true, would expose a County employee to civil liability for false imprisonment").

The Court GRANTS summary judgment to the County Defendants on Claim 1 for false arrest in violation of the Fourth Amendment and Claim 9.  The Court DENIES the motion with respect to the Claim 1 false arrest claim in violation of the California Constitution.

### B.   Qualified Immunity (Claim 2 Against Mendoza, Davis, Estrada, and Perez-Laguna)

Plaintiff alleges in Claim 2 that the County Defendants deprived her of her rights under the Fourth Amendment due to excessive force.  The County Defendants argue that Sergeant Mendoza, Sergeant Davis, Deputy Estrada, and Officer Perez-Laguna are entitled to qualified immunity. According to the County Defendants, the officers did not violate Plaintiff's rights because they had probable cause to arrest Plaintiff, they did not use excessive force, and their actions were objectively reasonable in light of clearly established law.  Mot. at 9–11.  Plaintiff argues that use of excessive force in effectuating an arrest is a clearly established violation of the Fourth Amendment and that summary judgment should be denied on qualified immunity for the same reasons that it should be denied on Plaintiff's excessive force claim.  Opp. at 7.

When evaluating an assertion of qualified immunity, "a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct."  *Gordon v. Cnty. of Orange*, 6 F.4th 961, 967–68 (9th Cir. 2021). "Either question may be addressed first, and if the answer to either is 'no,' then the state actor cannot be held liable for damages."  *Id.* at 968.

#### i.   Prong 1: Excessive Force

"[P]olice use of force violates the Fourth Amendment if it is objectively unreasonable under the circumstances."  *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018).  In *Graham v.*

1   *Connor*, 490 U.S. 386 (1989), the Supreme Court set forth the test by which courts determine

2   whether force was excessive.  Under this test, the Court must determine whether the officers'

3   actions were "objectively reasonable" in light of the facts and circumstances surrounding them.

4   *Id.* at 397.  This determination requires the Court to balance the "nature and quality of the

5   intrusion on the individual's Fourth Amendment interests against the countervailing governmental

6   interests at stake." *Id.* at 396.  The Supreme Court identified three non-exclusive factors that

7   should be considered in evaluating the government's interests: (1) the severity of the crime at

8   issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and

9   (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Id.*

10          The Court finds that there is a dispute of material fact as to the degree of force used.  The

11   evidence before the Court boils down to a dispute over credibility of witnesses that is best left for

12   the jury.  On one side, the officers' declarations and police reports state that they used minimal

13   force to control Plaintiff's hands and wrists to remove her from the doorframe of the RV and to

14   handcuff her.  *See, e.g.*, Mendoza Decl. ¶ 10; Perez-Laguna Decl. ¶ 11; Davis Decl. ¶ 11; Estrada

15   Decl. ¶ 7.  On the other side, Plaintiff states that the officers "roughly grabb[ed] me from behind,

16   jerk[ed] me around, put me in a pseudo-chokehold[,] and swung my body around."  Sage Decl.

17   ¶ 5.  She continues that "[a]t one point, the officers pushed me down, causing my head to bounce

18   off the bottom stair of the RV."  *Id.*  Although the County Defendants have also submitted a video,

19   it does not support a grant of summary judgment in favor of the County Defendants because it

20   does not blatantly contradict Plaintiff's account.  *Cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

21   The video submitted by the County Defendants begins after Plaintiff had collapsed to the floor and

22   the officers were attempting to handcuff her.  ECF No. 32-1 at 5–6 ("Def. Ex. A.").  The video

23   shows three officers standing around Plaintiff, who is on the ground, and two of those officers

24   have grabbed her wrists.  *Id.* at 0:00:01–19.  The video shows Plaintiff screaming for help and

25   screaming that the officers were squeezing her hands and hurting her.  *Id.* at 0:00:29–52.  The

26   video also depicts Plaintiff stiffening her arms and legs.  *Id.*  After Plaintiff's hands were cuffed

27   behind her back, the officers moved Plaintiff to her knees, and she later moved to her side.  *Id.* at

28   0:01:12–03:15.  Plaintiff requested to be moved to her stomach, and one of the officers assisted

United States District Court
Northern District of California

13

her to move to her stomach.  *Id.* at 0:03:18–04:00.  Plaintiff then moved to lie on her back, and the officers waited approximately five minutes for the ambulance to arrive.  During this time, the officers did not touch Plaintiff other than to assist her to sit up.  *Id.* at 00:04:00–09:30.  "The record is viewed in the light most favorable to the nonmovant[] . . . so long as [her] version of the facts is not blatantly contradicted by the video evidence.  The mere existence of video footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage."  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) (internal citations omitted).  Thus, although the video does not show the officers roughly grabbing Plaintiff from behind, jerking her body around, putting her in a pseudo-chokehold, or swinging her body around, these events could have occurred before the video begins.

The County Defendants are correct that Plaintiff's account of her injuries is contradicted by the medical records from her visit to the emergency room.  Plaintiff stated that she suffered "head trauma, head laceration, lack of memory, disorientation, confusion, headaches and neck aches, exacerbation of pre-existing physical injuries, as well as injuries to my wrist and arms . . . [in addition to] physical and emotional pain and suffering."  Sage Decl. ¶ 6.  However, the report from the emergency room showed that her vital signs were stable and that Plaintiff told medical staff that her pain was caused by an incident 2 years prior in which she was hit by a car.  Def. Ex. F.  This contradiction is significant because Plaintiff's medical records show that the actual harm involved may not have been very high.  However, to gauge the type and amount of force used, the Court must consider both "the risk of harm and the actual harm experienced."  *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012).  Although Plaintiff may not have experienced significant harm, her medical records do not contradict her account of the force used by the officers in effectuating the arrest.  The Court must draw all reasonable inferences in Plaintiff's favor, and it is reasonable to infer that when the officers roughly grabbed Plaintiff, jerked or swung her around, used a pseudo-chokehold, and pushed her down, these actions had the capacity to cause serious harm despite not actually causing serious harm.

In considering the government's interest, the Court finds that further genuine disputes of material fact preclude summary judgment.  The "immediate threat" factor is the most important of

the three *Graham* factors.  *See Sabbe*, 84 F.4th at 822.  Sergeant Mendoza became concerned that Plaintiff was attempting to enter her vehicle to retrieve a weapon, which would pose an immediate threat to the officers.  *See* Mendoza Decl. ¶ 9.  On its own, such evidence is not sufficient to show that Plaintiff was an immediate threat.  *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) ("A simple statement by an officer that he fears for his safety or the safety others is not enough; there must be objective factors to justify such a concern." (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001))).  Moreover, Plaintiff contests this fact, stating that she does not own any weapons and that, as a disabled woman that uses a walker, she posed no threat to the officers.  *See* Sage Decl. ¶ 9.  Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff did not pose an immediate threat to the officers and thus that the officers' exercise of force under these circumstances was unreasonable.  *See Wisler v. City of Fresno*, No. CV F 06-1694 AWI SMS, 2008 WL 2625865, at *9 (E.D. Cal. June 26, 2008) (denying summary judgment on an excessive force claim because there was a genuine dispute of material fact regarding whether the plaintiff grabbed the officer).

The Court also finds a dispute of material fact with respect to whether Plaintiff was actively resisting arrest.  Plaintiff does not dispute that she refused to comply with officer commands, but "such noncompliance does not constitute 'active resistance' supporting a substantial use of force."  *Bryan*, 630 F.3d at 830.  The Ninth Circuit has clarified that "[r]esistance . . . should not be understood as a binary state, with resistance being either completely passive or active" and that courts must "evaluate the nature of any resistance in light of the actual facts of the case."  *Id.* (internal quotation marks omitted).  For example, a suspect's refusal to put his arms above his head, brief physical resistance, and refusal to place his arms behind his back to be handcuffed do not constitute "particularly bellicose" resistance that would justify the use of substantial force.  *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005); *see also Forrester v. City of San Diego*, 25 F.3d 804, 805 (9th Cir. 1994) (protestors "remaining seated, refusing to move, and refusing to bear weight" despite being dragged and carried by officers was passive resistance).  In this case, the officers reported that Plaintiff physically struggled against them and characterized Plaintiff as actively resisting arrest.  *See, e.g.*, Def. Ex. B

15

1    at 11, 16, 22; Perez-Laguna Decl. ¶ 11; Davis Decl. ¶¶ 11–13; Estrada Decl. ¶¶ 7–8.  More

2    specifically, the officers state that Plaintiff's resistance included holding on to the door of the RV,

3    going limp, and making her body stiff.  *See, e.g.*, Def. Ex. B at 11; Estrada Decl. ¶ 7; Davis Decl.

4    ¶¶ 11, 13.  Although this evidence shows that Plaintiff offered some physical resistance, the record

5    is not clear on the duration of Plaintiff's resistance or at what point the officers' used a pseudo-

6    chokehold or jerked and swung her around.  The Court must view the evidence in the light most

7    favorable to Plaintiff and draw all reasonable inferences in her favor.  In doing so, the Court finds

8    that under these circumstances, Plaintiff was not actively resisting for purposes of the *Graham*

9    analysis.  *See Roberson v. City of Hawthorne*, 516 F.Supp.3d 1033, 1045 (C.D. Cal. 2021)

10   (finding that the use of a headlock and throwing the suspect against a wall was excessive force,

11   and that this was clearly established, where the plaintiff was unarmed and not a threat to officer

12   safety and the plaintiff's resistance to arrest was minimal), *aff'd in part, rev'd in part, dismissed in*

13   *part*, No. 21-55134, 2023 WL 2596834 (9th Cir. Mar. 22, 2023).

14        The Court finds there is a genuine dispute of material fact as to whether the officers used

15   excessive force in effectuating Plaintiff's arrest.  A reasonable jury could determine the force was

16   excessive.  The Court therefore moves to the second step of the qualified immunity analysis—

17   whether the violation was clearly established.

18        **ii.    Prong 2: Clearly Established**

19        "In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding

20   precedent.  If the right is clearly established by decisional authority of the Supreme Court or this

21   Circuit, our inquiry should come to an end."  *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023)

22   (quotation marks and citation omitted, alteration in the original).  "There need not be a case

23   directly on point for a right to be clearly established, [but] existing precedent must have placed the

24   statutory or constitutional question beyond debate."  *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th

25   Cir. 2022) (quotation marks and citation omitted, alteration in original).  "The plaintiff bears the

26   burden of proving that the right allegedly violated was clearly established at the time of the

27   violation."  *Id.* at 934–35.

28        The Court finds that granting qualified immunity to the officers turns on accepting the

16

United States District Court
Northern District of California

1   County Defendants' version of disputed facts, so qualified immunity is not appropriate at this

2   juncture.  The Ninth Circuit has recently affirmed that it is clearly established that, when an

3   individual is relatively calm, non-resisting, and poses little threat to safety, officers use excessive

4   force when they throw that individual against a wall, take them to the ground using a headlock,

5   and hold them to the ground by applying weight to their neck.  *Roberson v. City of Hawthorne*,

6   No. 21-55134, 2023 WL 2596834, at *1 (9th Cir. Mar. 22, 2023) (noting that the law was clearly

7   established by *Blankenhorn v. City of Orange*, 485 F.3d 463, 478 (9th Cir. 2007)); *see also*

8   *Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (holding that it is clearly established

9   that an officer's use of a chokehold against a non-resisting, restrained person violates the Fourth

10  Amendment).  Viewing, as the Court must, the evidence in the light most favorable to Plaintiff and

11  drawing all inferences in her favor, the question is whether it was clearly established that an

12  officer could use a pseudo-chokehold, jerk and swing the suspect around, and push the suspect to

13  the ground when the suspect was unarmed, posed minimal threat to officer safety, and was not

14  actively resisting arrest.  As discussed in more detail above, the Court finds a dispute of material

15  fact as to the extent of force used, so the Court will consider Plaintiff's account of the force used

16  for purposes of the clearly established prong.  Moreover, Plaintiff has presented sufficient

17  evidence showing that she was unarmed and posed a minimal threat to officer safety because she

18  is disabled and uses a walker.  Sage Decl. ¶ 9.  Finally, when viewed in the light most favorable to

19  Plaintiff, the evidence before the Court shows that Plaintiff was not actively resisting arrest.

20  Accordingly, the Court concludes that it was clearly established that when a suspect is unarmed,

21  poses minimal threat to officer safety, and is not actively resisting arrest, a police officer may not

22  use a pseudo-chokehold, jerk and swing the suspect around, and push the suspect to the ground.

23  *Blankenhorn*, 485 F.3d at 478; *Roberson*, 2023 WL 2596834, at *1.

24                                          *       *       *

25          Finally, the Court again finds that the County Defendants have failed to meet their initial

26  burden on summary judgment with respect to Plaintiff's excessive force claim under the California

27  Constitution because the County Defendants have failed to identify the elements of such a claim

28  and have not raised any argument for why they are entitled to summary judgment under the state

1  constitution.

2      Accordingly, the Court DENIES the motion for summary judgment on Claim 2.

3      **C.     Battery (Claim 10)**

4      The County Defendants argue that the officers are immune from suit under California

5  Government Code § 820.2.  Mot. at 11–12.  Plaintiff did not respond to the County Defendants'

6  argument on her battery claim in her opposition.  The County Defendants argue that failure to do

7  so constitutes waiver or abandonment of this claim.  Reply at 6.  Although the Court again agrees

8  that Plaintiff's failure to address this claim in her opposition constitutes forfeiture, the Court will

9  exercise its discretion and address this argument on its merits.

10     California Government Code § 820.2 states that "[e]xcept as otherwise provided by statute,

11 a public employee is not liable for an injury resulting from his act or omission where the act or

12 omission was the result of the exercise of the discretion vested in him, whether or not such

13 discretion be abused."  "This provision of the California Tort Claims Act applies to police

14 officers' discretionary decisions made during arrests.  But it has long been established that this

15 provision does not apply to officers who use unreasonable force in making an arrest."

16 *Blankenhorn*, 485 F.3d at 487 (internal citations omitted); *see also Rodriguez v. Cnty. of Los*

17 *Angeles*, 891 F.3d 776, 799 (9th Cir. 2018) ("[Section] 820.2 does not shield from liability

18 government employees who use excessive force in carrying out their duties.").  "Because federal

19 civil rights claims of excessive use of force are the federal counterpart to state battery and

20 wrongful death claims, federal cases are instructive in this area."  *Brown v. Ransweiler*, 171 Cal.

21 App. 4th 516, 527 (2009); *see also Galindo v. Tassio*, No. C13-00105, 2014 WL 819209, at *4

22 (N.D. Cal. Feb. 28, 2014) (denying immunity under § 820.2 by incorporating Fourth Amendment

23 analysis of whether force was unreasonable).

24     In Part III.B.i, *supra*, the Court applied federal cases on unreasonable force and found that

25 there are disputes of material fact as to the amount of force used, whether Plaintiff posed an

26 immediate threat, and whether Plaintiff was actively resisting arrest.  For the same reasons as

27 above, the Court finds that these disputes of material fact preclude summary judgment on

28 Plaintiff's battery claim because, when viewing the evidence in the light most favorable to

United States District Court
Northern District of California

18

Plaintiff, a reasonable jury could find that the officers used unreasonable force in making the arrest.  Accordingly, the Court DENIES the motion for summary judgment with respect to Plaintiff's state law battery claim (Claim 10).

### D.    Property Claims (Claims 1, 3, 7, and 8)

The County Defendants argue that they are entitled to summary judgment on Plaintiff's seizure, due process, California Civil Code § 2080, and common law conversion claims.  They argue that Plaintiff abandoned her property when her property was lawfully removed, and she was provided adequate notice and repeated warnings. Mot. at 13.  They also argue that she failed to retrieve her personal property within 30 days, her attorney recovered her RV, she lacks standing to assert a property interest in her RV because it is not registered under her name, and her trailer was deemed abandoned after she failed to retrieve it after nearly six months of storage on a County-owned lot.  *Id.* at 13–14.  Plaintiff argues that she was unlawfully deprived of her property interests because she was never informed how she could recover her property, the County left her property open to be picked at by others in the homeless community for 24 hours, and whether the County's 30-day storage policy is reasonable is a question of fact.  Opp. at 8–9.  In reply, the County Defendants argue that Plaintiff failed to respond to their arguments regarding California Civil Code § 2080 (Claim 7) and common law conversion (Claim 8) her failure to do so constitutes waiver or abandonment of these claims.  Reply at 6.  The Court will address Claims 1, 3, 7, and 8 in turn.

### i.    Claim 1: Seizure

The Court finds that disputes of material fact preclude summary judgment on Plaintiff's Fourth Amendment seizure claim.  "A seizure results if 'there is some meaningful interference with an individual's possessory interests in that property.'"  *Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)).  "The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there was an invasion of privacy."  *Id.*  "A seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.  The burden is on the Government to persuade the district court that a

seizure comes under one of a few specifically established exceptions to the warrant requirement." *Id.* (quoting *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)).

The seizure of Plaintiff's RV, trailer, and personal property was conducted without a warrant, but the County Defendants argue that Plaintiff's seizure claim should be dismissed because she abandoned her property. "The Fourth Amendment protects against unreasonable interferences in property interests regardless of whether there was an invasion of privacy." *Id.* "Because warrantless searches or seizures of abandoned property do not violate the [F]ourth [A]mendment, persons who voluntarily abandon property lack standing to complain of its search or seizure." *United States v. Baker*, 58 F.4th 1109, 1116 (9th Cir. 2023) (alterations in original) (quoting *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). "Abandonment is a factual determination that 'is a question of intent.'" *United States v. Fisher*, 56 F.4th 673, 686 (9th Cir. 2022) (quoting *Nordling*, 804 F.2d at 1469). "To find that a person has abandoned property, a district court need only conclude whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy at the time of the search [or seizure]." *United States v. Ferguson*, 33 F. App'x 849, 850 (9th Cir. 2002). When the County towed Plaintiff's RV and trailer and stored her personal belongings, the facts do not show that Plaintiff intended to relinquish her interests in her property. In fact, Plaintiff's behavior during her encounter with the police is reasonably explained by her desire to protect her property from the County. For example, Sergeant Davis, Sergeant Mendoza, and Officer Perez-Laguna observed that Plaintiff did not want the County to tow her RV, and Plaintiff states that she wanted to enter her RV to gather her personal belongings. *See, e.g.*, Davis Decl. ¶ 9; Mendoza Decl. ¶ 8; Perez-Laguna Decl. ¶ 9; Sage Decl. ¶ 8. Because this evidence shows that Plaintiff did not intend to abandon her property, the Court finds that the County Defendants are not entitled to summary judgment on Plaintiff's seizure claim.

### ii. Claim 3: Due Process

Plaintiff's Complaint raises a procedural due process claim relating to her loss of property. *See* Compl. ¶¶ 39–45. "To prevail on the as-applied procedural due process claims, Plaintiff[] must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a

deprivation of that interest by the government, [and] (3) a lack of process." *Blumenkron v. Multnomah Cnty.*, 91 F.4th 1303, 1314 (9th Cir. 2024) (internal quotation marks omitted) (alteration in original) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008)). On the first and second prongs, the Ninth Circuit has acknowledged that "homeless persons' unabandoned possessions are 'property' within the meaning of the Fourteenth Amendment." *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012). In *Lavan*, the Ninth Circuit held that the City of Los Angeles's practice of seizing and destroying homeless persons' unabandoned property violated the Fourteenth Amendment because the City did not provide any notice or opportunity to be heard before permanently depriving the homeless persons of their property interest. *Id.* at 1032–33. On the third prong, the Court looks to "(1) the private interest affected; (2) the risk of an erroneous deprivation and the probable value of any additional or substitute procedural safeguards; and (3) the government's interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179–80 (9th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Court finds that disputes of material fact preclude summary judgment on Plaintiff's procedural due process claim. First, Plaintiff disputes whether she received notices regarding how to retrieve her belongings. The evidence before the Court shows that the County provided individuals whose vehicles and trailers were towed with instructions on how to pick up the towed vehicles and trailers, that Plaintiff's counsel picked up her RV, and that she contacted the County regarding her trailer. *See* Suwansupa Decl. ¶ 12; Sage Decl. ¶¶ 10, 12; Romero Decl. ¶ 5. Similarly, the County stored seized personal property for at least 30 days and posted notices around the Lot regarding how to retrieve stored property. *See, e.g.*, Suwansupa Decl. ¶ 11; Def. Ex. M. However, Plaintiff's declaration states that she did not personally receive any of the notices regarding her vehicle, trailer, or belongings. Sage Decl. ¶ 13. The Court must view this evidence in the light most favorable to Plaintiff, and a reasonable jury could find based on this evidence that the County's notices were not effective to mitigate the risk of an erroneous deprivation. Second, Plaintiff argues that the County failed to store her property for 24 hours, leaving her property free to be picked at by other members of the homeless community. Plaintiff notes that the County cleared and stored belongings on the day after Plaintiff was arrested,

Suwansupa Decl. ¶ 11; that she did not receive an inventory of any of her stored items, Sage Decl. ¶ 13; and that "it is very common for items left behind by homeless persons to be immediately 'picked over' by members of the homeless community," Sage Decl. ¶ 13.  The County Defendants do not respond to these facts.  Drawing, as the Court must, all reasonable inferences in Plaintiff's favor, this evidence could lead a reasonable jury to find that the County violated Plaintiff's procedural due process rights because the County took possession of Plaintiff's property and left it open to theft, which has the same effect as destroying or discarding Plaintiff's property.  *See Lavan v. City of Los Angeles*, 693 F.3d at 1032–33; *Winslow v. City of Oakland*, No. 20-CV-01510-CRB, 2020 WL 1031759, at *4 (N.D. Cal. Mar. 3, 2020) (finding a likelihood of success on the merits for an as applied challenge to the City of Oakland's contemplated closure of the High Street encampment, where despite City policies for itemizing and storing belongings, the City had failed to follow these policies and destroyed or discarded property in previous evictions).  In light of these disputes of material fact, the Court finds that the County Defendants are not entitled to summary judgment on Plaintiff's due process claim.

As with Plaintiff's false arrest and excessive force claims, the Court finds that the County Defendants have failed to meet their initial burden on summary judgment with respect to Plaintiff's due process claim under the California Constitution because the County Defendants have failed to identify the elements of such a claim nor have they raised any argument for why they are entitled to summary judgment under the state constitution.

### iii.    Claims 7 and 8: Section 2080 and Conversion

California Civil Code § 2080 states that "[a]ny person or any public or private entity that finds and takes possession of any money, goods, things in action, or other personal property . . . shall, within a reasonable time, inform the owner, if known, and make restitution without compensation, except a reasonable charge for saving and taking care of the property."  Plaintiff alleges that the County Defendants violated the statute when they "failed to protect and preserve the personal property of Plaintiffs [sic] when the property was lawfully on the program property of One Starfish; failed to provide written notice that the property would be taken and failed to provide post-deprivation notice so that Plaintiff would have the opportunity to reclaim it within a

reasonable time." Compl. ¶ 58.  "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Sanchez v. City of Fresno*, No. 1:12-CV-00428-LJO-SK, 2013 WL 2100560, at *14 (E.D. Cal. May 14, 2013) (quoting *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1065 (1998)).  Plaintiff alleges that Defendants committed a wrongful act by breaching their duties under California Civil Code §§ 2080.2, 2080.4, and 2080.6. *See* Compl. ¶ 61.  Thus, Plaintiff's claims 7 and 8 turn on the adequacy of her allegations that the County Defendants violated § 2080.

The Court finds that the County Defendants have failed to meet their initial burden to either produce evidence negating an essential element of Plaintiff's claim or show that Plaintiff does not have enough evidence of an essential element to carry her ultimate burden of persuasion at trial. *Nissan Fire & Marine*, 210 F.3d at 1102.  Not only have the County Defendants failed to cite the relevant legal standard for a § 2080 claim or conversion, but they have not raised any argument as to why they are entitled to summary judgment on these claims.  To the extent that the County Defendants seek to incorporate their argument that Plaintiff abandoned her property, *see* Mot. at 13–14, the Court again finds that the evidence shows that Plaintiff did not intend to abandon her property.  In light of this failure of the County Defendants' motion, the Court finds that the County Defendants are not entitled to summary judgment on Plaintiff's § 2080 and conversion claims.

\*     \*     \*

Accordingly, the Court DENIES the motion for summary judgment with respect to Plaintiff's Fourth Amendment seizure claim (Claim 1), due process claim (Claim 3), claim under Cal. Civ. Code § 2080 (Claim 7), and claim for conversion (Claim 8).

### E.    State-Created Danger (Claim 4)

The County Defendants argue that they are entitled to summary judgment on Plaintiff's state-created danger claim because Plaintiff was offered resources for relocating her RV and trailer, she had the opportunity to retrieve them after they were towed, and Plaintiff in fact retrieved her RV.  Mot. at 14–15.  Plaintiff did not respond to this argument in her opposition, and

23

the County Defendants argue that her failure to do so constitutes waiver or abandonment.  Reply at 6.  Although the Court again agrees that Plaintiff's failure to address this claim in her opposition constitutes forfeiture, the Court will exercise its discretion and address this argument on its merits.

It is well-established that a state actor can violate an individual's due process rights if the state action "'affirmatively place[s] the plaintiff in a position of danger,' that is, where state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (alteration in original) (quoting *DeShaney v. Winnebago County Dep't of Soc. Serv.*, 489 U.S. 189, 197, 201 (1989)).  The "state-created danger" exception requires a plaintiff to prove two things: (1) "affirmative conduct" that exposes the plaintiff to a foreseeable danger that she would not otherwise have faced; and (2) the state action was taken "with 'deliberate indifference' to a 'known or obvious danger.'" *Martinez v. High*, 91 F.4th 1022, 1028 (9th Cir. 2024) (quoting *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023)).  To satisfy the first requirement, Plaintiff must show that the state action created or exposed her to actual, particularized danger that she would not otherwise have faced.  *Murguia*, 61 F.4th at 1111.  The second requirement, deliberate indifference, is a stringent standard that requires a culpable mental state.  Plaintiff must show that the state actor knew that something was going to happen but ignored the risk and exposed Plaintiff to it.  *Id.*

The Court finds that Plaintiff has failed to present any evidence that supports her theory of a state-created danger.  Plaintiff alleges that she was exposed to the elements in the winter without adequate shelter on the streets.  Compl. ¶ 47.  However, Plaintiff presents no evidence supporting her allegations that state action exposed her to actual, particularized danger that she otherwise would not have faced.  For example, she does not present the Court with any evidence regarding the winter conditions to which she was allegedly exposed.  In fact, the only evidence before the Court shows that the County provided resources to assist individuals such as Plaintiff relocate from the lot and that Plaintiff recovered her RV.  Importantly, Plaintiff also does not allege and does not present evidence supporting a finding that any of the County Defendants was deliberately indifferent to Plaintiff's safety and welfare.  *Cobine v. City of Eureka*, 250 F.Supp.3d 423, 433 (N.D. Cal. 2017) (dismissing a state-created danger claim against the City for its eviction of

homeless occupants from the Palco Marsh because the plaintiffs failed to allege "intentional eviction during precarious weather or other facts indicating deliberate indifference to the safety and welfare of the population"). Because, based on the evidence before the Court, no reasonable jury could find in Plaintiff's favor, the Court GRANTS summary judgment to the County Defendants on Claim 4.

### F.    Bane Act (Claim 5)

The County Defendants argue that they are entitled to summary judgment on Plaintiff's claim under California Civil Code § 52.1 because she has failed to show threats, intimidation, or coercion independent from her unlawful seizure claims. Mot. at 15–16. They also argue that there is no evidence that any of the County Defendants acted intentionally or recklessly to deprive Plaintiff of her rights. *Id.* Plaintiff did not respond to these arguments in her opposition, and the County Defendants argue that her failure to do so constitutes waiver or abandonment. Reply at 6. Although the Court again agrees that Plaintiff's failure to address this claim in her opposition constitutes forfeiture, the Court will exercise its discretion and address this argument on its merits.

As an initial matter, the Court observes that the County Defendants have briefed the incorrect standard. The County Defendants argue that the Bane Act requires some "threat, intimidation, or coercion" independent of the underlying constitutional violation, relying on *Shoyoye v. County of Los Angeles*, 203 Cal.App.4th 947 (2012). "But subsequent California appellate rulings have disapproved of *Shoyoye* and the Ninth Circuit has declined to follow it on that basis." *Shine v. Fuston*, No. 20CV2036-LAB-DEB, 2021 WL 4460885, at *8 (S.D. Cal. Sept. 29, 2021). Instead, Plaintiff is required to "allege and prove *specific intent* to violate the plaintiff's protected rights." *Id.*

The Court agrees with the County Defendants that Plaintiff has failed to prove that any of the officers acted with specific intent to violate her protected rights. The record does not contain any evidence from which a reasonable jury could find that the officers acted "with the particular purpose of depriving [Plaintiff] of [her] enjoyment of the interests protected by that right." *Cornell v. City & Cnty. of San Francisco*, 17 Cal.App.5th 766, 803 (2017). Accordingly, the Court GRANTS summary judgment to the County Defendants on Claim 5.

### G. *Monell* Claim (Claim 6)

The County Defendants argue that the County is not liable under *Monell* because there is no evidence of a constitutional violation of Plaintiff's rights and there is no evidence of a policy, custom, or practice of unlawful eviction. Mot. at 16–17. Plaintiff did not respond to this argument in her opposition, and the County Defendants argue that her failure to do so constitutes waiver or abandonment. Reply at 6. Although the Court again agrees that Plaintiff's failure to address this claim in her opposition constitutes forfeiture, the Court will exercise its discretion and address this argument on its merits.

"The Supreme Court in *Monell* held that municipalities may only be held liable under section 1983 for constitutional violations resulting from official [municipal] policy or custom." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "In particular, municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Plaintiff's complaint appears to allege municipal liability under a practice or custom theory and a failure to train theory. *See* Compl. ¶¶ 52–53 (alleging that "Mendoza, Davis, Estrada, and [Perez-Laguna]'s actions were part of the customary practices of the Monterey County Sheriff's Department" and that "Supervisors failed to provide and/or adopt policies and regulations to ensure that uniformed officers . . . received adequate and appropriate training").

A municipality may be held liable based on an unconstitutional policy if a plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents"; rather "[t]he custom must be so persistent and widespread that it constitutes a permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citations omitted).

1   "Failure to train may constitute a basis for *Monell* liability where the failure amounts to

2   deliberate indifference to the rights of those who deal with municipal employees." *Benavidez v.*

3   *Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021).  Liability for policies of inaction,

4   including failures to supervise and train, requires a showing that the policy (1) "amounts to

5   deliberate indifference to the plaintiff's constitutional rights" and (2) "caused the violation in the

6   sense that the municipality could have prevented the violation with an appropriate policy."

7   *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (quoting *Tsao v. Desert Palace, Inc.*, 698

8   F.3d 1128, 1143 (9th Cir. 2012)).  Deliberate indifference generally "requires showing that the

9   defendant 'was on actual or constructive notice that [the] omission would likely result in a

10  constitutional violation.'" *Id.* (quoting *Tsao*, 698 F.3d at 1145).  That is, a "pattern of similar

11  constitutional violations . . . is 'ordinarily necessary' to demonstrate deliberate indifference."

12  *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  Rarely, "the possibility . . . that the

13  unconstitutional consequences of [a policy of inaction] could be so patently obvious that a city

14  could be liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

15      Both of Plaintiff's theories of *Monell* liability fail for the same reason—Plaintiff alleges

16  only one incident.  Plaintiff's *Monell* claim relies on the seizure of her property and the

17  circumstances surrounding her arrest, but she fails to allege or present evidence of similar

18  incidents to show a persistent and widespread custom or a pattern of constitutional violations to

19  demonstrate deliberate indifference.  Nor does Plaintiff present any evidence that this is one of the

20  "rare" instances in which it was "patently obvious" that the officers' actions in this case would

21  create § 1983 liability.  *See Connick*, 563 U.S. at 62, 64.  In the absence of evidence, no reasonable

22  juror could find that the County is liable for the alleged constitutional violations under *Monell*.

23  *See Smith v. Cnty. of Orange,* 678 F.Supp.3d 1182, 1214 (C.D. Cal. 2023) (granting summary

24  judgment on a *Monell* claim based on practice and custom and failure to train theories where the

25  plaintiff failed to offer evidence of similar constitutional violations).  Accordingly, the Court

26  GRANTS summary judgment to the County on Claim 6.

27      **H.    Wrongful Eviction (Claim 11)**

28      The County Defendants argue that Plaintiff cannot assert a claim for unlawful eviction

1    pursuant to California Civil Code § 799.20 because that law applies only to mobile home parks

2    which are held out for rent and human habitation, of which the Lot and the Safe Parking Program

3    were not.  Mot. at 17–18.  Plaintiff argues that she was treated as a participant of the One Starfish

4    Parking Program and that she was entitled to residency protections under California law.  Opp. at

5    9–10.

6            The Court agrees with the County.  California Civil Code § 799.20 *et seq*, the

7    "Recreational Vehicle Park Occupancy Law," applies to recreational vehicle parks.

8    "'Recreational vehicle park' or 'park' has the same meaning as defined in Section 18862.39 of the

9    Health and Safety Code."  Cal. Civ. Code § 799.30.  Section 18862.39 defines a "Recreational

10   vehicle park" as:

11              any area or tract of land, or a separate designated section within a
                mobilehome park *where two or more lots are rented, leased, or held
12              out for rent or lease, or were formerly held out for rent or lease* and
                later converted to a subdivision, cooperative, condominium, or other
13              form of resident ownership, to accommodate owners or users of
                recreational vehicles, camping cabins, or tents.
14

15   Cal. Health & Safety Code § 18862.39 (emphasis added).  Plaintiff fails to present any evidence

16   from which a reasonable jury could infer that the Lot was rented, leased, or held out for rent or

17   lease, or was formerly held out for rent or lease.  Indeed, the only evidence in the record supports

18   the opposite conclusion.  The Lot is a County-owned parking lot adjacent to the Monterey County

19   Board of Supervisors, District 4 offices in Marina, California.  Suwansupa Decl. ¶ 3.  The Lot

20   displayed clear signage stating that parking in the Lot is "for official business and visitors to

21   county offices."  *See id.* ¶ 7; ECF No. 32-1 at 828 ("Def. Ex. K"); ECF No. 32-1 at 830 ("Def. Ex.

22   L").  Finally, the County opened the lot to operate a safe parking program to allow unsheltered

23   individuals to park overnight, but the record does not show that the County rented or leased the

24   land to unsheltered individuals.  *See* Suwansupa Decl. ¶¶ 2–3.  Plaintiff has failed to identify any

25   evidence that creates a genuine dispute of material fact as to whether the Lot falls under the

26   Recreational Vehicle Park Occupancy Law.

27           Although the Court agrees with the County that Plaintiff's theory under the Recreational

28   Vehicle Occupancy Law is not cognizable, the Court observes that the County has failed to

1  challenge the other theories under which Plaintiff brings a wrongful eviction claim, including

2  common law, California Civil Code §§ 1946 and 1946.2, California Code of Civil Procedure

3  § 1162; and California Code of Civil Procedure § 1159.  Because the County has failed to address

4  these legal theories, it has failed to meet its initial burden on summary judgment.  Accordingly, the

5  Court GRANTS summary judgment on Claim 11 to the County only on Plaintiff's Recreational

6  Vehicle Occupancy law theory and DENIES summary judgment on Claim 11 with respect to the

7  other three theories.  If the County wishes to challenge this theory, it may submit a 5-page motion

8  for judgment on the pleadings to seek dismissal consistent with the Court's ruling on Defendant

9  One Starfish's motion to dismiss.  *See* ECF No. 80.

**IV.   ORDER**

10

11          For the foregoing reasons, IT IS HEREBY ORDERED that Defendants County of

12  Monterey, Matthew Mendoza, Scott Davis, Angel Estrada, and Miguel Perez-Laguna's motion for

13  summary judgment (ECF No. 32) is GRANTED IN PART and DENIED IN PART.

14          1.      Summary judgment is GRANTED to the County Defendants with respect to Claim

15  1 to the extent it raises a claim for false arrest in violation of the Fourth Amendment.  Summary

16  judgment is DENIED with respect to Claim 1 to the extent it raises a claim for unlawful seizure of

17  property in violation of the Fourth Amendment and claims under the California Constitution.

18          2.      Summary judgment is DENIED on Claim 2 (excessive force in violation of the

19  Fourth Amendment and California Constitution).

20          3.      Summary judgment is DENIED on Claim 3 (violation of procedural due process

21  rights in violation of the Fourteenth Amendment and California Constitution).

22          4.      Summary judgment is GRANTED to the County Defendants on Claim 4 (state-

23  created danger in violation of the Fourteenth Amendment).

24          5.      Summary judgment is GRANTED to the County Defendants on Claim 5 (violation

25  of the Bane Act).

26          6.      Summary judgment is GRANTED to the County on Claim 6 (*Monell* liability).

27          7.      Summary judgment is DENIED on Claim 7 (violation of Cal. Civ. Code § 2080).

28          8.      Summary judgment is DENIED on Claim 8 (conversion)

United States District Court
Northern District of California

9. Summary judgment is GRANTED to the County Defendants on Claim 9 (false arrest).

10. Summary judgment is DENIED with respect to Claim 10 (battery).

11. Summary judgment is GRANTED to the County on Claim 11 (wrongful eviction) to the extent it raises a claim under the Recreational Vehicle Occupancy Law.  Summary judgment is DENIED on Claim 11 on all other legal theories.  The County may file a 5-page motion for judgment on the pleadings to seek dismissal consistent with the Court's ruling on Defendant One Starfish's motion to dismiss.

Dated:  June 10, 2024

_____

BETH LABSON FREEMAN
United States District Judge